# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MELVIN D. REED,

      Plaintiff,

      v.                             Case No. 05-C-0987

INNOVATIVE HEALTH & FITNESS,

      Defendant.

---

## DECISION AND ORDER

---

## NATURE OF THE CASE

The plaintiff, who is proceeding pro se, filed this action against his former employer, defendant Innovative Health and Fitness, Ltd. (IHF), alleging that the defendant discriminated against him on the basis of his race and age. The plaintiff's discrimination claim based on race is brought pursuant to Title VII of the Civil Rights, 42 U.S.C. § 2000e et seq. His age discrimination claim alleges a violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 215 et seq. The plaintiff also alleges that the defendant retaliated against him by terminating his employment after he threatened to file a discrimination claim.

The defendant has filed a motion for summary judgment and a motion for sanctions. (Docket #23). The motions are fully briefed and will be addressed herein.

## MOTION FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322 (emphasis added).

Evidence relied upon in a motion for summary judgment must be of a kind that would be admissible at trial. See Waldridge v. American Hoechst Corp., 24 F.3d 918, 921 n.2 (7th Cir. 1994) (citing Gustovich v. AT & T Communications, Inc., 972 F. 2d 845, 849 [7th Cir. 1992]; Fed. R. Civ. P. 56 [e]). Federal Rules of Civil Procedure 56(e) expressly provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

See also, Holloway v. Milwaukee County, 180 F.3d 820, 827 n.9 (7th Cir. 1999) (upholding district court's exclusion on summary judgment of portions of affidavit as hearsay).

At the outset, the court notes that in his amended complaint, the plaintiff states that he has filed nine prior federal cases. He lists no state court cases, even though the complaint form asks if the litigant has "begun lawsuits in state or federal court." (Complaint at 1). The defendant points out that the plaintiff has filed 14 employment discrimination cases in the United States District Court for the Eastern District of Wisconsin, in addition to 13 civil cases in Circuit Court for Milwaukee County. He has brought 28 employment discrimination claims against former employers before the Wisconsin Equal Rights Division (ERD). (Affidavit of Theresa E. Essig [Essig Aff.] ¶ 2 and Exh. A).

The court has reviewed the federal court case filings and Melvin Reed has, in fact, filed 14 civil actions in the Eastern District of Wisconsin since 1991. The plaintiff signed the complaint declaring "under penalty of perjury" that the information in the complaint "is true and correct." (Complaint at 8). The plaintiff is cautioned that providing false information on any document signed under penalty of perjury, including a federal civil rights complaint, can subject him to charges of perjury or making a false statement. The plaintiff is on notice that any future false statements to the court may result in the imposition of sanctions.

- 3 -

## **RELEVANT UNDISPUTED FACTS[1]**

The plaintiff, Melvin Reed ("Reed"), is an African American male who began his employment with the defendant, Innovative Health and Fitness, Ltd. (IHF) on September 9, 2003. The plaintiff, who was 46 years of age, was hired to work as a personal fitness trainer. Timothy Beyer, the defendant's executive director made the decision to hire the plaintiff. His employment ended on November 13, 2003.

Defendant IHF is a health and fitness facility located at 8800 S. 102nd Street, Franklin, Wisconsin 53132. IHF is a comprehensive fitness facility offering a variety of services to its members, including one-on-one personal training, group fitness classes, weight loss/management education, spa services, and medical services.

As a personal trainer, the plaintiff was responsible for performing health assessments and conducting exercise orientations. He was also expected to motivate and educate IHF's members. In addition, the plaintiff monitored the fitness area and enforced IHF's fitness area rules and regulations. At the time he was hired, the plaintiff had over 15 years of experience as a personal trainer. As a result of his prior training and experience, the plaintiff was able to commence personal training sessions with IHF members immediately.

Approximately two weeks after the plaintiff started his employment with IHF, the plaintiff contacted Mr. Beyer at home and raised a number of concerns regarding his pay. The plaintiff indicated that he wanted to resign because he was not making enough money. Mr. Beyer explained to the plaintiff that he was being paid on a commission basis and that it would take

---

[1]As a general matter, unless accompanied by citation, the relevant facts are taken from the defendant's proposed findings of fact which are not disputed and from the relevant and undisputed portions of the plaintiff's affidavit and his complaint. The plaintiff's complaint is a verified complaint. See Ford v. Wilson, 90 F.3d 245,246 (7th Cir. 1996).

- 4 -

time to receive commissions. The plaintiff indicated that he could not wait to receive his commissions. As a result, Mr. Beyer agreed to pay him up front for the training packages that he had sold thus far. The plaintiff accepted this proposal and agreed not to resign. Mr. Beyer has not done this for any other employee at IHF.

Over the next several weeks, the plaintiff asked Ms. Oldham for training. Any training that the plaintiff received was requested by him.

On October 20, 2003, a meeting was held with the personal training staff to discuss compensation and benefit structure. At the meeting, the plaintiff voiced his displeasure regarding the amount of paid vacation time the personal trainers were entitled to receive. He and Scott Cole, IHF's executive administrator, had a disagreement about companies in general providing employment benefits. (The parties disagree as to whether the plaintiff raised his voice at Mr. Cole.)

Following the meeting, Mr. Cole expressed to Mr. Beyer that he thought the plaintiff should be terminated as a result of his behavior at the staff meeting. Although Mr. Beyer agreed that the plaintiff's behavior at the meeting was inappropriate, Mr. Beyer ultimately convinced Mr. Cole to give the plaintiff a second chance to improve his performance.

Over the next few weeks, the plaintiff was late for work on at least three occasions. Mr. Beyer received reports from the front desk employees that the plaintiff also was late for a number of his personal training appointments.

During the first week in November, the plaintiff spoke with Glen Gilhuber, a newly-hired African American male fitness trainer, about "the difficulties he had when [he] started working" at IHF. (Plaintiff's Affidavit [Plaintiff's Aff.] ¶ 25). Sometime thereafter, Ms. Oldham told the plaintiff

- 5 -

not to discuss such matters with Mr. Gilhuber. The plaintiff told Ms. Oldham that she was overstepping her authority.

On November 11, 2003, the plaintiff missed a scheduled meeting with his supervisor, Katie Oldham. The plaintiff did not inform Ms. Oldham in advance that he would be unable to meet with her. He did not show up for the meeting.

Ms. Oldham decided to issue a written disciplinary warning to the plaintiff. Because she was unable to meet with the plaintiff on that day to issue the written warning in person, Ms. Oldham left the warning for the plaintiff either in his mailbox or on the front counter, along with a letter explaining the reason for the warning and discussing various concerns that she had regarding his performance. (The parties disagree as to where Ms. Oldham left the warning.)

Later that day, November 11, 2003, the plaintiff complained to Mr. Beyer about the written warning he received for missing his scheduled appointment with Ms. Oldham and Ms. Oldham's treatment of him. He referred to Ms. Oldham as a "hatchet manager" and also stated that if written disciplinary warnings were in his file, it would be difficult to collect unemployment benefits. The plaintiff said that Ms. Oldham may have some problems with him because of his race. The plaintiff also mentioned to Mr. Beyer that he would respond to Ms. Oldham's warning in writing.

In his written response to the disciplinary warning dated November 14, 2003, the plaintiff said that he felt that Ms. Oldham's warning was "heavy handed." (Plaintiff's Aff. ¶ 37). He noted that Ms. Oldham had missed a client assessment on November 11, 2003, and that he had done the assessment for her. He also said that he believed that the real reason she gave him the warning was because he told her not to interfere with his talks with Glen. The plaintiff refused to sign the written disciplinary warning. (Affidavit of Timothy Beyer [Beyer Aff.] ¶ 19).

- 6 -

On November 12, 2003, Ms. Oldham attempted to talk to the plaintiff while he was training a client. The plaintiff told her he could not talk to her at that time due to his client obligations. At approximately 7:10 p.m. that evening, Ms. Oldham was advised that the plaintiff was late for a previously-scheduled health assessment with an IHF member. Ms. Oldham instructed the person to locate the plaintiff within the facility and have him perform the assessment. The plaintiff was aware that an assessment had been scheduled, but he had a conflict since he had arranged a personal training session for the same time.

At about 7:25 p.m., a person at the front desk called the plaintiff and asked him if he had time to talk to Ms. Oldham. The plaintiff said he did not because he was eating and only had five minutes until his next appointment. Shortly thereafter, Ms. Oldham called the plaintiff and asked why he missed the assessment. The plaintiff stated that he could not speak to her and that he was in the middle of eating. The plaintiff told Ms. Oldham three or four times that day that he could not speak to her.

Ms. Oldham issued another disciplinary warning regarding the plaintiff. The Disciplinary Action Form states that the written warning was issued because the plaintiff neglected an assessment and was late for an assessment. (Beyer Aff. ¶ 21; Exh. C).

During the week of November 12, 2003, the plaintiff spoke with a woman named Paula who asked him to be her trainer. To see if they would be a "good fit," the plaintiff asked her a few questions. (Plaintiff's Aff. ¶ 50). He determined that they were not a good fit and that he was not the trainer she needed. The plaintiff states that he was "very professional, courteous and informative." (Plaintiff's Aff. ¶ 55).

At approximately 7:05 a.m. on November 13, 2003, Mr. Beyer received an e-mail from Ms. Oldham, enclosing an e-mail she had received from Paula Haber, an IHF member. In the e-mail,

Ms. Haber discussed "how disappointed [she] was in [the plaintiff]." (Beyer Aff. ¶ 23; Exh. D). Ms. Haber stated that she had signed up for a personal training session with the plaintiff. She wrote that the plaintiff had called her the same day and that she was "very pleased with his promptness." Id. Like the plaintiff, Ms. Haber had experience as a personal trainer. The email stated that when Ms. Haber mentioned she was a personal trainer, the plaintiff said, "I don't train other trainers" and "continued to treat [her] as though [she] had never stepped foot in a gym." Id. Ms. Haber further stated: "He finally just said he had someone else to put in that time slot that needed him more than [she] did!!!" Id. The email concluded: "I'm not a complainer -- but I didn't think he was very professional. And he basically told me to get lost." Id.

On November 13, 2003, at approximately 1:00 p.m., members of management, specifically Mr. Cole, Mr. Beyer, Ms. Oldham and Melissa Arps, met to discuss the course of action that should be taken with respect to the plaintiff. At the meeting, the group discussed the two written disciplinary warnings and the complaint from Ms. Haber. Ms. Oldham also summarized her telephone conversation with the plaintiff the prior evening. The management group decided that the plaintiff should be terminated if he was unwilling to improve and agree to be more cooperative and respectful towards Ms. Oldham.

Later that day, at approximately 2:00 p.m., Mr. Beyer and Ms. Oldham met with the plaintiff to discuss concerns regarding his performance. At the start of the meeting, Mr. Beyer explained to the plaintiff the reason for the first disciplinary warning, namely, his failure to show up for a scheduled meeting with his supervisor.

They also discussed the assessment which had not taken place the previous evening. The plaintiff explained that he had called the client to inform her of the scheduling conflict, but that her son had not given her the message. He said that the client was upset with her son for not relaying

- 8 -

the message, not with him. The plaintiff also said that Ms. Oldham had missed a scheduled assessment and that he had done the assessment for her. The plaintiff referred to Ms. Oldham as a "hatchet manager," and further stated that she was "petty," "overbearing," and "heavy-handed." (Beyer Aff. ¶ 26). The plaintiff looked directly at Ms. Oldham for several seconds and said, "I will never, ever respect you again…never…never." (Beyer Aff. ¶ 27.) Mr. Beyer told the plaintiff that he "was disrespecting Ms. Oldham" for looking directly at her when making this point. (Plaintiff's Aff. ¶ 63).

At some point during the meeting, a person called from the front desk to advise the plaintiff that his 2:30 p.m. assessment client was waiting for him. Mr. Beyer "scold[ed]" the plaintiff for not taking the client promptly and told him to do so. (Plaintiff's Aff. ¶ 67). In light of what he considered the plaintiff's inappropriate comments and insubordinate behavior toward his supervisor, in addition to his history of performance problems during the short time that he was employed at IHF, Mr. Beyer decided to terminate his employment with IHF. At some point, Mr. Beyer told Ms. Oldham to do the plaintiff's client assessment.

The plaintiff informed Mr. Beyer that he was going to file a discrimination complaint against the company for Ms. Oldham's treatment of him and if Mr. Beyer took some action against him, he would file a second charge of retaliation. (The parties dispute whether the plaintiff made this statement before or after Mr. Beyer told him he was terminated.) The parties do not dispute that Mr. Beyer told the plaintiff he was fired.

After he was told that he was terminated, the plaintiff then approached Mr. Beyer and said, "Fuck you!" (Deposition of Melvin Reed [Plaintiff's Dep.] at 105; Beyer Aff. ¶ 30). As Mr. Beyer escorted the plaintiff out of the building, he again approached Mr. Beyer and said "Fuck you" to him. (Beyer Aff. ¶ 30). The plaintiff dropped his things and made a gesture as if he was going to

- 9 -

start a fight. Mr. Beyer said, "Am I going to have to call the police?" (Beyer Aff. ¶ 31). The plaintiff said, "fuck you" to Mr. Beyer "a couple of times." (Plaintiff's Dep. at 105). Mr. Beyer said "Let's go Melvin," and proceeded to escort the plaintiff out of the building. (Beyer Aff. ¶ 31). After his dismissal, the plaintiff requested a copy of his employment file from Mr. Beyer.

Mr. Beyer hired another African-American personal trainer, Glenn Gilhuber, while the plaintiff was employed by IHF. Mr. Gilhuber remains employed at IHF. Mr. Gilhuber has never complained to Mr. Beyer that defendant IHF discriminated against him or treated him differently because of his race.

On August 24, 2004, the plaintiff filed a claim with the Wisconsin Equal Rights Division (ERD), which was subsequently cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC). On June 10, 2005, the EEOC issued a Dismissal and Notice of Right to Sue.

## **ANALYSIS**

Before addressing the merits of the defendant's summary judgment motion, the court will address the defendant's contention that the court lacks jurisdiction over the plaintiff's claims because he failed to timely file his action. Before a person may commence a Title VII action or an ADEA action in federal court, he must first file a charge with the Equal Employment Opportunity Commission (EEOC)[2] within the time allotted by the statute. The EEOC must also issue a right to sue letter. 42 U.S.C. §§ 2000e-5(b)(e) and (f); 29 U.S.C. §626(d); Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 [1974]; Rush v. McDonald's Corp., 966 F.2d 1104, 1110 (7th Cir

---

[2]The plaintiff filed a claim with the Wisconsin Equal Rights Division on August 24, 2004, which was subsequently cross-filed with the EEOC.

1992); <u>Casteel v. Executive Bd. of Local 703 of Int'l Brotherhood of Teamsters</u>, 272 F.3d 463, 464 (7th Cir. 2001).

The defendant maintains that on June 10, 2005, the EEOC issued a Dismissal and Notice of Right to Sue. However, the plaintiff did not file his complaint in federal court alleging race and age discrimination and retaliation until September 13, 2005. According to the defendant, when the actual date of receipt of the letter is unknown, courts have presumed that a plaintiff received the letter three days after it was mailed. Applying this three day presumption, the defendant asserts that the plaintiff was required to commence this action on or before September 11, 2005. Therefore, the defendant maintains that the plaintiff filed this action two days late.

In response, the plaintiff avers that he received his notice of his right to sue from the EEOC on June 15, 2005. (Plaintiff's Aff. ¶ 79). In light of the plaintiff's representation, the plaintiff filed his complaint within 90 days of his receipt of the right to sue letter from the EEOC. Thus, the complaint was timely filed.

<u>Racial Discrimination</u>

Title VII of the United States Code makes it unlawful for an employer to ". . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . .." 42 U.S.C. § 2000e-2(a)(1). There are two ways for a plaintiff to establish discrimination, the "direct method" and the "indirect method." "The 'direct method' . . . requires the plaintiff to put forth evidence that demonstrates that she was a member of a protected class and '*as a result* suffered the adverse employment action of which [s]he complains.'" <u>Burks v. Wisconsin Dept. of Transp.</u>, 464 F.3d 744, 751 (7th Cir. 2006) (quoting <u>Sylvester v. SOS Children's Villages Illinois, Inc.</u>, 453 F.3d 900, 902 [7th Cir. 2006]) (emphasis in original). Thus, under the direct method, "a plaintiff

- 11 -

must come forward either with direct or circumstantial evidence that 'points directly to a discriminatory reason for the employer's action.'" Burks, 464 F.3d at 751 (quoting Blise v. Antaramian, 409 F.3d 861, 866 [7th Cir. 2005]). The "indirect method" requires that the plaintiff apply the burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). See also, Kirk v. Federal Property Management Corp., 22 F.3d 135, 138 (7th Cir. 1994).

Initially, the burden is on the plaintiff to establish a prima facie case of discrimination. To establish a prima facie case of discrimination, the plaintiff must show: 1) that the plaintiff belongs to a protected group 2) that the plaintiff performed the job satisfactorily; 3) that the plaintiff suffered an adverse employment action, and 4) that the employer treated similarly situated employees outside the protected group more favorably. If the plaintiff establishes all the elements of the prima facie case, the plaintiff raises an inference of discrimination. See Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132 (7th Cir. 1994).

Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for the challenged employment decision. Burks, 464 F.3d at 751. Finally, if the defendant produces a legitimate, nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to show that the legitimate, nondiscriminatory reason was pretextual. See Scaife v. Cook County, 446 F.3d 735, 739-40 (7th Cir. 2006); Kirk, 22 F.3d at 138.

The plaintiff may prove pretext directly by showing that "a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason [for the adverse employment action] is unworthy of credence." Billups v. Methodist Hosp. of Chicago, 922 F.2d 1300, 1303 (7th Cir. 1991) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,

- 12 -

256 [1981]).  "In order to be pretextual, the proffered reasons must be a 'lie.'" <u>Burks</u>, 464 F.3d at 754.  The court must look to "whether the employer's reasons for its decision are honest and genuinely motivated."  <u>Id.</u>  The court is "not concerned with whether or not the employer's actions were 'mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons.'"  <u>Id.</u> (quoting <u>Jordan v. Summers</u>, 205 F.3d 337, 343 [7th Cir. 2000]).

In this case, the plaintiff did not rely on the direct method of proof and presents no direct or circumstantial evidence that points directly to a discriminatory reason for the defendant's action. Therefore, the court will consider the plaintiff's claims under the indirect method of proof.

It is not disputed that the plaintiff is a member of a protected class and that he suffered an adverse employment action when he was terminated.  Therefore, the court must consider whether the plaintiff was meeting the legitimate expectations of his employer and whether similarly situated individuals were treated more favorably.  <u>See</u> <u>Lenoir</u>, 13 F.3d at 1332.

The defendant asserts that the plaintiff had a history of employment problems during his brief tenure at IHF.  Specifically, the defendant asserts that the plaintiff was late for a number of personal training appointments, missed a scheduled meeting with his supervisor and admitted to being late to work on at least three occasions.  He also got into an argument with the defendant's executive administrator at an October 2003 staff meeting.  The defendant asserts that the plaintiff was disrespectful and engaged in insubordination towards his supervisor.

In response, the plaintiff states that other trainers missed meetings and personal training sessions and were not "written up."  (Plaintiff's Brief at 15).  He acknowledges that he was late to work three times, but that this was due to "unforeseen circumstances."  <u>Id.</u>  With respect to the warning for a missed scheduled assessment, the plaintiff states that he contacted the client and cancelled the assessment the day before it was scheduled to occur.  The plaintiff states that his

- 13 -

supervisor, Ms. Oldham, missed a scheduled assessment and that he did the assessment for her. The plaintiff also states that he did not talk to Ms. Oldham when she attempted to talk to him several times on November 12, 2003, because initially he was with a client. When she attempted to talk to him later, he told her that he could not speak to her because he was eating and he had only five minutes until his next appointment.

The undisputed facts establish that the plaintiff had difficulties at work. The plaintiff was late for work three times and also was late for a number of his personal training appointments during the two months he was employed by the defendant. He did not show up for a scheduled meeting with his supervisor. As a result, he was issued a written disciplinary warning. The plaintiff described Ms. Oldham's action as "heavy handed."

There is also no dispute that the plaintiff refused to speak to Ms. Oldham on November 12, 2003, despite her repeated attempts to talk to him. Initially, the plaintiff was with clients and said he could not talk to her. She tried to reach the plaintiff again at about 7:10 p.m. because he was late for a scheduled health assessment. Shortly thereafter, Ms. Oldham called the plaintiff directly to find out why he missed the assessment. The plaintiff told her he could not talk to her because he was eating and his next appointment was in five minutes. The plaintiff was given a written disciplinary warning for neglecting an assessment and for being late for an assessment.

The undisputed facts also establish that a client, Ms. Haber, sent an email to Ms. Oldham complaining about her contact with the plaintiff. She reported that after the plaintiff found out she was a trainer, he told her that he did not train other trainers and treated her like she "had never stepped foot in a gym." (Beyer Aff. ¶ 23). She also wrote that the plaintiff told her he had put someone else in her time slot who needed him more than she did. Ms. Haber concluded by stating that the plaintiff "basically told me to get lost." Id.

- 14 -

The defendant's management team decided to meet with the plaintiff to discuss concerns about his performance. At the meeting, the plaintiff referred to Ms. Oldham as a "hatchet manager" and said she was "petty," "overbearing" and "heavy-handed." Id. ¶ 26. He then looked at Ms. Oldham and said, "I will never, ever respect you again . . . never . . . never." Id. ¶ 27. Given the plaintiff's inappropriate comments, his insubordination and performance problems, Mr. Beyer decided to terminate the plaintiff's employment.

The evidence submitted by the plaintiff does not counter the performance deficiencies identified by the defendant. Although the plaintiff offers excuses for some of his deficiencies or states that other employee were late or missed assessments, he has not established that he was meeting his employer's legitimate expectations.

The plaintiff also has not shown that a similarly situated employee outside the protected group was treated more favorably. Although he asserts that he was treated differently than younger, white employees, he does not specifically identify any individual whom he claims was similarly situated.

For a person to be similarly situated to the plaintiff, the plaintiff must show that the person is "directly comparable" to him "in all material respects." Burks, 464 F.3d at 751 (quoting Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 [7th Cir.2002]). "Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." Id.

Here, the plaintiff has failed to show that younger, white employees were similarly situated to him. The plaintiff has provided no information about the job responsibilities of these workers or shown that their job performance was similar. "In order to show a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a 'comparable

- 15 -

set of failings.'" <u>Burks</u>, 464 F.3d at 751 (quoting <u>Haywood v. Lucent Technologies, Inc.</u>, 323 F.3d 524, 530 [7th Cir. 2003]).

Thus, the plaintiff has not shown that he was meeting his employer's legitimate employment expectations or that any similarly situated employee outside the protected group was treated more favorably. Accordingly, he has failed to establish a <u>prima</u> <u>facie</u> case of discrimination based on race.

Even if the court were to conclude that the plaintiff had established a <u>prima</u> <u>facie</u> case, the defendant has articulated a legitimate, nondiscriminatory reason for terminating the plaintiff's employment. Specifically, Mr. Beyer considered the plaintiff's history of performance problems, including his tardiness for work and for personal training appointments, his inappropriate conduct at meetings, his insubordination toward his supervisor and attitude. The plaintiff has not presented any evidence that undermines the defendant's decision to terminate him for his job deficiencies, inappropriate conduct and insubordination.

Moreover, the decision to fire the plaintiff was made by Mr. Beyer, the same person who hired him. When an employee in a protected class is hired and fired by the same person in a relatively short period of time, there is a rebuttable presumption of non-discrimination. <u>See</u> <u>Roberts v. Separators, Inc.</u>, 172 F.3d 448, 452 (7th Cir. 1999). The plaintiff has not produced evidence showing that the defendant's reasons for firing him are not believable.

In sum, the court concludes that the plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of discrimination based on race. Additionally, even if the court were to conclude that the plaintiff had established a <u>prima</u> <u>facie</u>, he has not presented evidence to show that the defendant's stated reason for his termination was pretextual. Accordingly, the defendant is entitled to summary judgment on the plaintiff's discrimination claim based on race.

- 16 -

Age Discrimination

A plaintiff may prove age discrimination in two ways, namely by presenting direct evidence of age discrimination or by utilizing the indirect, burden-shifting method of proof for Title VII cases originally set forth in McDonnell Douglas, 411 U.S. 792 (1973) and later adapted to age discrimination cases under the ADEA. The plaintiff does not contend that he has direct evidence of age discrimination.

To prove a prima facie case of age discrimination, the plaintiff must show that 1) he was in the protected age group,[3] 2) he was performing his job according to his employer's legitimate expectations, 3) he suffered an adverse employment action, and 4) substantially younger, similarly situated employees were treated more favorably. Debs v. Northeastern Ill. University, 153 F.3d 390, 395 (7th Cir. 1998); Roberts v. Separators, Inc., 172 F.3d 448, 451 (7th Cir. 1999); see also, Fairchild v. Forma Scientific, Inc., 147 F.3d 567, 571-72 (7th Cir. 1998).

As in Title VII cases, once the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to offer a "legitimate, nondiscriminatory reason" for its action. McDonnell Douglas, 411 U.S. at 802; Fairchild, 147 F.3d at 572. If the employer is able to offer a legitimate, nondiscriminatory reason for the job action, the burden shifts back to the plaintiff who must offer evidence that the reason is only pretextual. See Fairchild, 147 F.3d at 572; Taylor v. Canteen Corp., 69 F.3d 773, 780 (7th Cir. 1995) (citing Roper v. Peabody Coal Co., 47 F.3d 925, 926 [7th Cir. 1995]).

The plaintiff's age discrimination centers solely on the fact that he was in his forties when he was hired and that the other female fitness trainers, including his supervisor, were under 30

---

[3]The protected class consists of employees "at least 40 years of age." 29 U.S.C. § 631(a).

years of age. Other than his bare assertion that he was discriminated against due to his age, the plaintiff has presented no evidence to support this claim. He has not shown that he was treated differently because of his age. Although the plaintiff satisfies the first and third prongs of the prima facie test for an age discrimination claim, he has not shown that he was performing his job according to his employer's expectations and that similarly situated, younger employees were treated more favorably. Therefore, the plaintiff has failed to establish a prima facie case of discrimination based on his age.

Even if the court concluded that the plaintiff satisfied the requirements for a prima facie case, as the court explained in addressing the plaintiff's Title VII claim, the defendant has articulated legitimate nondiscriminatory reasons for its decision to terminate him. Similarly, the plaintiff has not shown that the defendant's stated reasons for its action were pretextual. See Debs, 153 F.3d att 395. Accordingly, the defendant's motion for summary judgment on the plaintiff's age discrimination claim will be granted.

Retaliation Claims

Under both Title VII and the ADEA, to establish a prima facie case of retaliation, the plaintiff he is required to present sufficient evidence that: 1) he engaged in a statutorily protected activity, 2) he suffered an adverse employment action, and 3) there is a causal link between the protected expression and the adverse action. Russell v. Board of Trustees of University of Illinois at Chicago, 243 F.3d 336, 344 (7th Cir. 2001) (Title VII); Vanasco v. National-Louis University, 137 F.3d 962, 968 (7th Cir. 1998) (ADEA). "To prove a causal link the plaintiff is required to show that the employer would not have taken the adverse action 'but for' the plaintiff's engagement in the protected activity." Dunn v. Nordstrom, Inc., 260 F.3d 778, 784 (7th Cir. 2001). "If the plaintiff gets this far, the defendant must then come forward with a legitimate business reason for taking the

- 18 -

employment action; if it does so, the plaintiff may survive summary judgment only by presenting sufficient evidence that the defendant's justification is pretextual." <u>Russell</u>, 243 F.3d at 344; <u>Vanasco</u>, 137 F.3d at 968.

The parties disagree as to when the plaintiff was advised that he was terminated – before or after he told Mr. Beyer that he would be filing a discrimination complaint. However, even assuming the plaintiff was told that he was fired after he said he would file a discrimination complaint, the plaintiff has failed to establish a causal connection between his protected express and the adverse action. He has not presented any evidence to show that the defendant would not have terminated his employment 'but for' the plaintiff's engagement in the protected activity. <u>See</u> <u>Dunn</u>, 260 F.3d at 784. Therefore, the plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of retaliation under either Title VII or the ADEA against the defendant.

Furthermore, the defendant has presented evidence of legitimate, nondiscriminatory reasons for terminating the plaintiff's employment and the plaintiff has not established that the defendant's reasons were pretextual. Accordingly, for the reasons stated herein, the defendant's motion for summary judgment on the plaintiff's claims of age and race discrimination and retaliation will be granted.

## **MOTION FOR SANCTIONS**

The defendant also has filed a motion for sanctions, asserting that the defendant's history of frivolous lawsuits and abuse of the judicial system warrants the imposition of sanctions. The defendant asserts that the plaintiff has made a "full-time career out of litigating against his former employers." (Defendant's Brief at 22).

Rule 11 of the Federal Rules of Civil Procedure provides for the imposition of sanctions on a litigant who files a frivolous action or is pursuing litigation for improper purposes, including

- 19 -

harassment and delay. Fed. R. Civ. P. 11(b). A court can sanction a litigant, even a <u>pro se</u>, litigant for filing a frivolous suit regardless of the motives for such filing. <u>United States ex rel. Verdone v. Circuit Court</u>, 73 F.3d 669 (7th Cir. 1995) (per curiam). In deciding whether to impose sanctions in such a case, the court can take into account a history of frivolous litigation. <u>Id.</u>

The court is not unsympathetic to the defendant, especially given the plaintiff's extensive history of litigation in both federal and state court. However, based on the information before it, the court cannot conclude that the plaintiff's claims in the instant action are frivolous. The court notes that in <u>Reed v. The Great Lakes Companies, Inc.</u>, 330 F.3d 931, 937 (7th Cir. 2003), another case brought by the plaintiff, the court stated that as "odd as it may seem, none of Reed's previous cases has been adjudged frivolous." The court reversed an award of sanctions in favor of the defendant. The defendant's motion for sanctions will be denied.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 21) be and hereby is **granted.**

**IT IS ALSO ORDERED** that the defendant's motion for sanctions (Docket # 21) be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this action be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2007.

BY THE COURT:


   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge

O:\CIV\Reed sj decision.wpd

March 7, 2007